UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAZARO DE JESUS FERNANDEZ GARCIA and )
MIGUEL ANGEL VALDEZ DIP, )
    Plaintiffs, )
) No. 1:08-cv-57
-v- )
) HONORABLE PAUL L. MALONEY
BARLEN CONTRACTING, INC, and )
BART WINGBLAD, )
    Defendants. )
_____)

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Plaintiffs' motion for partial summary judgment. (ECF No. 99.)

Plaintiff Lazaro de Jesus Fernandez Garcia ("Fernandez Garcia") and Plaintiff Miguel Angel Valdez Dip ("Valdez Dip") (collectively "Plaintiffs") worked for Defendant Barlen Contracting in 2006. Defendant Bart Wingblad owns and operates Defendant Barlen Contracting (collectively "Defendants"). In their second Amended Complaint (ECF No. 53 "Compl."), Plaintiffs allege they were employees of Defendant Barlen Contracting and that Defendant Barlen Contracting violated the Fair Labor Standards Act and the Michigan Minimum Wage Law by failing to pay them the federally mandated minimum wage and overtime. The issue raised in Plaintiffs' motion is whether they were employees or whether they were independent contractors. After Plaintiffs filed their motion and brief in support (ECF No. 99 and 100), Defendants filed a response. (ECF No. 103.)

**LEGAL FRAMEWORK**

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of

material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. *Matsushita*, 475 U.S. at 574; *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) ("After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" (quoting *Anderson*, 477 U.S. at 248)). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

## DISCUSSION

Defendant Barlen Contracting largely performs work site construction, including excavating, grading, and work for underground utilities. (ECF No. 103-1 Def. Ex. A "Wingblad Dep." 11.) The events giving rise to the lawsuit occurred during a landscaping job in the Grand Rapids and Detroit area. Wingblad, on behalf of Barlen Contracting, agreed to do some landscaping work at some apartment complexes in Grand Rapids. (*Id.* 55-56.) Barlen Contracting was to remove dead and overgrown shrubs and replace them with new shrubbery and put down fresh mulch. (*Id.* 56.) Barlen

Contracting was also supposed to address some drainage issues. (*Id.*) The job was supposed to take approximately two weeks. (*Id.*) Wingblad testified that five individuals performed the work Barlen Contracting: Plaintiffs, Ruben and Julio Montes, and a fifth man, whose name he could not remember. (*Id.* 57.)

The Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Michigan Minimum Wage Law ("MMWL"), Mich. Comp. Laws § 408.381 *et seq.*, approximately parallel each other. *Arrington v. Michigan Bell Tel. Co.*, 746 F. Supp. 2d 854, 857 (E.D. Mich. 2010) (citing *Saginaw Firefighters Ass'n v. City of Saginaw*, 137 Mich. App. 625, 631-32, 357 N.W.2d 908, 911 (1984). The question of whether an individual is an employer, as that term is defined, is a question of law. *Fegley v. Higgins*, 16 F.3d 1126, 1131 (6th Cir. 1994). "The court determines as a matter of law whether a party is an employer using the 'economic reality' test." *Id.* The question of whether an employment relationship exists is also a question of law. *Id.* at 1132. There are situations, however, that there will be material facts sufficiently in dispute as to preclude summary judgment on the question of the employment relationship. *Imars v. Contractors Manufacturing Servs., Inc.*, 165 F.3d 27, 1998 WL 598778, at * 3 (6th Cir. Aug. 24, 1998) (unpublished table opinion) (per curiam). "[W]here there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts, as here, the question [of employment status] is to be resolved by the finder of fact in accordance with the appropriate rules of law." *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992).

The Sixth Circuit Court of Appeals summarized how a court determines whether an employment relationship exists.

> Whether an employment relationship exists under a given set of

circumstances "is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes." *Powell v. U.S. Cartridge Co.*, 339 U.S. 492, 528, 70 S.Ct. 577, 94 L.Ed. 1017 (1950). Rather, it is the "economic reality" of the relationship between the parties that determines whether their relationship is one of employment or something else. [*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 993, 6 L.Ed.2d 100 (1961))]. "The issue of the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity." *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct 1473, 91 L.Ed. 1772 (1947)).

. . .

For example, in distinguishing between employees and independent contractors, courts have focused on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *See, e.g., Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). To guide the inquiry, courts consider factors such as the degree of control exercised by the alleged employer, the extent of the relative investments of the worker and the alleged employer, the degree to which the worker's opportunity for profit or loss is determined by the alleged employer, the skill and initiative required in performing the job, and the permanency of the relationship. *Id.* No one factor is dispositive, nor can the "collective answers to all of the inquiries produce a resolution which submerges the dominant factor – economic dependence . . . . The five tests are aids – tools to be used to gauge the degree of dependence of the alleged employees on the business with which they are connected. It is *dependence* that indicates employee status. *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976). Each factor must be applied with the ultimate notion of dependence in mind. *Id.*

*Solis v. Laurelbrook Sanitarim and Sch.*, 642 F.3d 518, 522-23 (6th Cir. 2011). The Sixth Circuit has also noted that the factors are "far to easy to manipulate and mold during application to suit a preconceived result." *Imars*, 1998 WL 598778, at * 5 (citing *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987)).

### A. CONSIDERATION OF THE FACTORS

**1. Degree of Control**

Ruben Montes ("Ruben") testified that, when working for Barlen Contracting, he usually had the title "foreman" or "supervisor." (ECF No. 101-2 Pl. Ex. B "Ruben Dep." 5.) At the job site in Grand Rapids, Ruben said it was fair to consider him the foreman. (*Id.* 15.) Both Plaintiffs and Julio Montes ("Julio") testified that Ruben was the supervisor. (ECF No. 101-1 Pl. Ex. A "Julio Dep." 9; ECF No. 101-3 Pl. Ex. C "Fernandez Garcia Dep." 9; ECF No. 10104 Pl. Ex. D "Valdez Dip Dep." 22.) Julio testified that Wingblad came to the Grand Rapids job "at least six or seven times" to make sure everything was alright. (Julio Dep. 9.) Ruben and Julio both also testified that Wingblad set the daily hours. (Ruben Dep. 15; Julio Dep. 9.)

In contrast to this testimony, Wingblad testified that when he offered Plaintiffs the work in Grand Rapids, he made it clear to them that there would not be any direct supervision by the company. (Wingblad 60 and 61-62.) Wingblad testified that he did not designate someone to be in charge, but because he was responsible for safety on the job site, he frequently identified a person who would do what needed to be done to enforce the safety policy. (*Id.* 60-61.) Wingblad insists the only instructions he provided were limited to safety issues. (*Id.* 72-73.) Wingblad admitted he met the individuals at the work site and outlined what work needed to be done. (*Id.* 62.) Wingblad recalled going to the Grand Rapids job site three times. (*Id.* 64.)

**2. Relative Investments**

This factor, relative investments, focuses on the contributions the alleged employer and the employee make to the specific job. *See Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 847 (5th Cir. 2010). When considering the investment factor, a court looks at the amount of large capital expenditures, such as risk capital and capital investments, not negligible items or the cost of labor. *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998).

Plaintiffs both testified that they obtained a "d/b/a" certificate in order to work for Barlen Contracting. (Valdez Dip Dep. 21-22; Fernandez Gacia Dep. 13-14, 22-23.) Ruben and Julio also testified that they had to obtain a d/b/a certificate in order to work for Barlen Contracting. (Julio Dep. 8; Ruben Dep. 14-15.) Plaintiffs also testified that they did not provide any tools or machinery for the job; all the tools were provided for them. (Valdez Dip Dep. 24; Fernandez Garcia Dep. 26.) Julio testified that Wingblad provided the tools and trucks for the job. (Julio Dep. 9.)

Wingblad testified that he did not provide any tools, such as shovels, rakes, and wheelbarrows, and that the people he hired provided those implements themselves. (Wingblad Dep. 64 and 74.)

### 3. Opportunity for Profit or Loss

Under the factor for opportunity for profit or loss, a court considers whether the plaintiff's earnings were tied to their performance for the work. Typically, an independent contractor, rather than an employee, has more opportunity for securing a profit or realizing a loss. Both Plaintiffs testified they were paid by the hour. (Valdez Dip Dep. 8; Fernandez Garcia Dep. 11.)

### 4. Permanency of the Relationship

A more permanent relationship favors finding that an employment relationship exists. *See Brock v. Sup. Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1088). Wingblad testified that the Grand Rapids job was supposed to last for only two weeks. (Wingblad Dep. 56.) At his deposition, Fernandez Garcia acknowledged that his time sheets show that he worked for Barlen Contracting starting in June and ending in July. (Fernandez Garcia Dep. 19-20.) Unlike Fernandez Garcia, Valdez Dip worked for Barlen Contracting before the landscaping job in Grand Rapids. (Valdez Dip Dep. 6.) However, Valdez Dip did experience a period of time between jobs with Barlen

6

Contracting. (*Id.* 10.) Valdez Dip testified the Grand Rapids job lasted about five weeks. (*Id.* 15.)

**5. Skill and Initiative**

The lack of the requirement for specialized skills generally indicates employee status. *Dole v. Snell*, 875 F.2d 802, 811 (10th Cir. 1989). On the other hand, possession and demonstration of specialized skills and initiative indicates independent-contractor status. *Hopkins v. Cornerstone America*, 545 F.3d 338, 345 (5th Cir. 2008).

The job in Grand Rapids primarily focused on landscaping, but included drainage problems. (Wingblad Dep. 56.) Fernandez Garcia described the work as gardening, planting, mulching and putting a drainage system in around the apartments. (Fernandez Garcia Dep. 15.) Ruben explained that the drainage portion of the job included laying pipe from areas where water was collecting and connecting those pipes to a manhole, so the water could drain. (Ruben Dep. 6-7.)

**6. Integral Part of the Employer's Operation**

The Sixth Circuit has considered, as a sixth factor, whether the service rendered by the alleged employee is an integral part of the alleged employer's business. *Donovan*, 736 F.2d at 1119-20. Plaintiffs argue that the Grand Rapids job was a typical job for Barlen Contracting and therefore must be considered integral to the business.

### B. EXISTENCE OF AN EMPLOYMENT RELATIONSHIP

Although the existence of an employment relationship is a question of law, the Court concludes that there exists sufficient questions of material fact that preclude determination of an employment relationship. The parties and witnesses have provided conflicting testimony about the degree of control exerted by Wingblad over the work performed at the Grand Rapids job site. Similarly, the parties and witnesses have provided conflicting testimony about who provided the

tools for the job. The profit factor weighs in favor of finding that an employment relationship existed. Plaintiffs were paid by the hour and there is no evidence that they had any ability to alter their situation so as to gain a profit or realize a loss. On the other hand, the permanency factor weighs in favor of finding that no employment relationship exited. Fernandez Garcia's relationship with Barlen Contracting lasted only for the duration of this particular job, while Valdez Dip's relationship lasted only slightly longer. There exists genuine issues of material fact whether Plaintiffs were considered skilled workers. Not only did the job include gardening, but it also included drain and pipe installation. Finally, reasonable inferences supporting and opposing the existence of an employment relationship could be drawn from the facts relevant to the final factor. Landscaping may fall within the general category of worksite construction, but landscaping need not be integral or essential to the sort of jobs Barlen Contracting typically performed. Given these material disputes, the Court cannot determine, as a matter of law, that Plaintiffs were employees, rather than independent contractors. The record does not clearly establish that Plaintiffs were economically dependent on Defendants

## CONCLUSION

Because there remains genuine issues of material fact precluding the legal determination that Plaintiffs were employees of Barlen Contracting, Plaintiffs are not entitled to summary judgment.

**ORDER**

For the reasons provided in the accompanying opinion, Plaintiffs' motion for partial summary judgment (ECF No. 99) is **DENIED.**

**IT IS SO ORDERED.**

Date: March 27, 2012 /s/ Paul L. Maloney
Paul L. Maloney
Chief, United States District Judge